[No. 8642. Department One. September 20, 1910.]

ELMER E. HULL *et al.*, *Respondents*, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, *Appellant.*[1]

EVIDENCE—PAROL EVIDENCE—COLLATERAL ISSUE. That the plaintiffs in an action were the joint owners of an automobile, by reason of a conditional contract of sale in writing, is a collateral issue only, which may be proved by parol.

APPEAL—PRESERVATION OF GROUNDS—OBJECTIONS. Error cannot be predicated on the exclusion of a writing which might have shown the value of an article in issue, where its production was not asked for that purpose.

EVIDENCE—WRITING—DEMAND TO PRODUCE. A demand to produce a writing, made of a witness on the stand, is not such as to put the parties to the action in default for failure to produce it.

EVIDENCE—PAROL EVIDENCE—BOOK ACCOUNTS. Parol evidence is admissible of the amounts received for the sale of chattels, although the amounts received were recorded in regular books of account.

[1]Reported in 110 Pac. 804.

TRIAL—MOTIONS—ARGUMENT OF COUNSEL—DISCRETION.  It is discretionary for the trial court to refuse counsel the privilege of arguing on his motion for a nonsuit.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.  In an action for the destruction of an automobile at a railroad crossing, the plaintiff is entitled, on the question of his contributory negligence, to have his conduct judged by the circumstances surrounding him at the time, and compared to that of a reasonably prudent man.

DAMAGES—INSTRUCTIONS—MAXIMUM.  In an action for damages, it is not error to give an instruction stating the maximum amount to which the plaintiffs would be entitled under the pleadings.

RAILROADS — CROSSINGS — DUTY TO STOP, LOOK AND LISTEN.  The driver of an automobile, whose machine became stalled on a railroad crossing, owed no absolute duty to stop, look, and listen before driving on the track, if he could ascertain that he could cross in safety by looking and listening.

SAME—NEGLIGENCE—QUESTION FOR JURY.  The negligence of a railroad company is for the jury, where it appears that its electric motor and train ran down an automobile, stalled on a crossing, that the machine could have been seen for a distance of over 400 feet, and the train stopped within 160 feet, but the motorman was not at the motor and did not get there until within 60 feet of the crossing.

SAME—CONTRIBUTORY NEGLIGENCE—AUTOMOBILES.  The contributory negligence of the driver of an automobile, stalled on a railroad crossing by its engine going dead, is for the jury, where he testified that he was unable to stop the automobile before reaching the track, and expected its momentum would carry it across, and the men in the car, who failed to push the car off, immediately started to flag the train and were not subject to his control.

Appeal from a judgment of the superior court for King county, Tallman, J., entered October 19, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages.  Affirmed.

*Morris B. Sachs*, for appellant.

*J. L. Waller, Ralph Simon*, and *Thos. R. MacMahon*, for respondents.

FULLERTON, J.—The respondents brought this action against the appellant to recover the value of an automobile which was run into and destroyed by a train operated on the

appellant's railway. At the time of the accident, the automobile was being driven by a son of the respondent Hull, who had engaged to carry a pleasure party, seven in number, from Georgetown, in King county, to a place on Lake Washington. The road over which the party traveled parallels the appellant's railway for a considerable distance, finally crossing it at a place known as Rainier Beach. The car approached the crossing running at the rate of about eight miles per hour, and reached a point some twenty feet therefrom when its engine suddenly stopped, "went dead", as the driver expressed it. The driver sought to revive the engine by manipulating certain of its controls, and in the meantime the car ran forward onto the track by reason of its own momentum, stopping with the rear wheels between the rails of the railway track. Just then a train was heard approaching along the appellant's railway, and three of the passengers, who had hastily alighted from the car, ran along the track towards the approaching train, and by shouting and making gestures sought to call the attention of the persons in charge of the train to the position of the automobile. They testify, however, that the train continued its approach without an appreciable diminution in its speed, crashed into the automobile, and threw it from the track against a telephone or trolley pole of the appellant company with such force as to break down the pole and totally demolish the automobile. On the trial the jury rendered a verdict in favor of the respondents, and from the judgment entered thereon, this appeal is taken.

In the complaint the respondents alleged that the Winton Motor Carriage Company had sold the automobile in question to the respondent Hull on a conditional contract of sale, reserving title in itself, and that there was still due on the contract from Hull to the company some $1,100. This allegation was denied by the appellant on information and belief. At the trial the respondent Hull while on the stand was questioned concerning the contract, and answered to the

effect that there was such a contract existing between himself and his coplaintiff. He was then asked the amount due on the contract, and over the objection of the appellant, was allowed to answer. Later on, an agent of the motor company was placed on the stand and testified as a witness for the plaintiffs. On cross-examination he was asked concerning this contract, and stated its effect substantially as alleged in the complaint, stating further, in answer to a direct question, that the contract was in writing. He was thereupon asked to produce the contract, when objection was made by counsel for the plaintiff, and the objection sustained by the court. These rulings constitute the errors first assigned. The assignments, we think, are not well taken. The purpose of the allegation in the complaint was to show the relation of the plaintiffs to each other and their right to join as parties plaintiff in bringing the action. Its denial by the appellant raised but a collateral issue only, which could be proved without the production of the written contract. *State v. McKinnon*, 99 Me. 166, 58 Atl. 1028; *Garrison v. Glass*, 139 Ala. 512, 36 South. 725; *Elgin J. & E. R. Co. v. Thomas*, 215 Ill. 158, 74 N. E. 109; 25 Am. & Eng. Ency. Law (2d ed.), 173. There was, therefore, no error in permitting the respondents to show by parol that they had a joint interest in the property even though a written contract existed between them.

The appellant argues further, however, that it was entitled to have the written contract exhibited, since it might have shown the contract price of the machine, which would have been some evidence of its value. Had it been shown that the writing recited the contract price of the machine, and had the appellant requested its production in order to present it as a part of its own case, it might have been error for the court to have refused to require its production, but it was not error under the circumstances shown here. The demand to produce the writing was not made on the parties, but of a witness under cross-examination. This was not such

a ·demand as to put the parties in default even· were the right to the document undoubted.

. In the course of the trial a witness was placed on the stand and questioned concerning the disposition made of the automobile after the accident, and answered to the effect that it was disposed of as junk. He was then asked to state the sum received for it. At this point the appellant interrupted the examination and requested permission to ask a question for the purpose of ascertaining the competency of· the evidence. Permission was granted it, whereupon it elicited from the witness the fact that the junk had been sold in parts to different persons and that regular books of account had been kept showing such sales and the sums received therefor. The appellant thereupon objected to the witness' testifying to the amount of the sales, contending that the entries in the account books were the best evidence. The objection was overruled, and error is assigned thereon. But manifestly the ruling is without error. A person having knowledge of the sale of a chattel and the amount paid or agreed to be paid for it is a competent witness to the fact, although he may have recorded in his books of account a memorandum of the sale. Indeed, books of account have themselves always been regarded as a species of secondary evidence, admissible in favor of the party keeping them, because of the necessities of the case; not because they were the best evidence of the transactions recorded in them. Greenleaf, Evidence (14th ed.), § 117. The fact that such entries have been made has never been held to preclude the testimony of the person having knowledge of the facts and able to testify to them from memory.

It is next assigned that the court erred in denying to the appellant's counsel the privilege of arguing his motion for a nonsuit. But the court was not obligated to listen to counsel's reasons for his motion. If the court felt satisfied that the case made was one that must be submitted to the jury

in any event, it could, without error, announce this fact to counsel and refuse to hear arguments upon the question.

The court instructed the jury in part as follows:

"If you should find from the evidence that the driver of the automobile might have avoided the accident by adopting some course of action other than that pursued by him, he would not necessarily be guilty of contributory negligence in that respect, provided you find that the driver of the automobile acted as an ordinarily careful and prudent person would have acted under like circumstances and conditions, and you further find that an ordinarily prudent man under the particular circumstances surrounding the said driver at the time, would have been justified in adopting the course pursued by the driver of the automobile. The driver's conduct in that regard is not necessarily to be judged by the facts as they now appear before you, but the plaintiff is entitled to have the acts and conduct of the said driver considered in the light of the facts as they appeared to him at the time, and if you find that an ordinarily careful and prudent man would have acted as said driver acted with his, the driver's view of all the circumstances and conditions as they were at that time, you will be justified in finding that he was not guilty of contributory negligence.

"If you find for the plaintiffs you cannot award them a greater amount than they have asked for in their second amended complaint, that is—I believe, gentlemen, you have asked for $2,500, and the estimated value of the junk was $200—that would be $2,300—you could not find for any greater sum than $2,300."

The first of these follows substantially an instruction approved by this court in *Traver v. Spokane Street R. Co.*, 25 Wash. 225, 65 Pac. 284, and is a correct statement of the law. After an accident happens it is always easy to see many ways by which it could have been avoided, but such considerations do not usually afford a correct test of negligence. A victim of an accident is entitled to have his conduct judged by the circumstances surrounding him at the time of the accident—by the conditions as they appeared to one in his then situation—and if his conduct when so judged

appears to be that of a reasonably prudent person, he cannot be said to be guilty of negligence. The instruction of the court did no more than announce this rule.

The second instruction was nothing more than a statement to the jury of the maximum amount of damages they would be entitled to find in case they found for the plaintiffs. It was without error.

The appellant requested the court to give the following instruction which was refused:

"The jury are instructed that if they find that the servants, agents or employes of the plaintiffs in charge of said automobile, by any act or omission on their part were guilty of negligence, and that such negligence directly contributed in causing the collision and injuries, if any, then you will find for the defendant regardless of whether or not it or its servants were also negligent. And in this connection you are instructed that it is the duty of the chauffeur who was in charge of the said automobile, if you find from the evidence that he was in charge thereof, and who was acting as the agent of the plaintiffs in running said automobile, if you find from the evidence that he was so acting, upon approaching said crossing, to have stopped, looked and listened before place in question, and if you find from the evidence that the chauffeur did not stop, look and listen upon approaching said tracks, and that his failure to so stop, look and listen was the proximate cause of the accident, such failure would be negligence of the plaintiffs, and plaintiffs cannot recover herein, and your verdict must be for the defendant."

This instruction was properly refused as not correctly stating the law applicable to the facts of the case. The respondents' driver owed no absolute duty to stop before attempting to cross the appellant's track. If on approaching the track he could ascertain by looking and listening that he could cross in safety, he has complied with the rule. Here the driver testified that he traveled parallel to the appellant's track for six miles without meeting or being passed by a single car, that on arriving at the track he looked in both directions and listened and neither saw nor heard a

train approaching, and that the time it would take an approaching train to travel over the distances he could see the track gave him plenty of time to cross if no mishap befell his car. The sequel, also, proves his statement to be true. It will be remembered that the car stopped with the rear wheels between the rails, and that the passengers had time to alight after the stopping of the car and proceed along the track towards the approaching train a considerable distance before the train reached the place of crossing. Under these circumstances it would have been error for the court to have charged the jury that the respondent was guilty of negligence as a matter of law if he did not stop before attempting to cross the track.

The material part of the other instruction requested was included in the general charge given by the court on its own motion. This satisfies the rule.

The remaining assignments question the sufficiency of the evidence to sustain the verdict. But without following the argument of the appellant's counsel, we think the evidence justified the court in submitting the case to the jury. On the question of the appellant's negligence, the evidence most favorable to the respondent—and it is this evidence we must accept as true—tended to show that the track in the direction from which the train approached the automobile was practically straight for a distance of from four hundred to four hundred and fifty feet, and that the automobile while on the track was plainly visible from the train for this entire distance; that the train consisted of an electric motor and a flat car, the latter being loaded with steel rails, and was in charge of a motorman and a brakeman; that when first seen it was not running at an excessive speed, and could have been stopped, as the motorman himself says, within a distance of from one hundred and sixty to one hundred and seventy feet; that when the car became stranded and the passengers sought to attract the attention of the motorman to its position, the motorman was not at the motor, and did not reach

it until the train had approached to within some sixty feet of the automobile, too late to materially check its speed before it crashed into the car. On these facts, it was clearly for the jury to say whether there was negligence on the part of the appellant's servants.

On the question of contributory negligence, it is insisted that the respondents' servant was negligent when he failed to stop his machine before reaching the track after he discovered that the engine had stopped running, and, also, that he was negligent in that he did not call the passengers to his assistance and push the car from the track out of the way of danger. But with reference to the first objection, the driver stated that the distance between the point the engine stopped and the track was too short within which to stop the car, and furthermore, he thought if the engine did not start from the efforts he made to start it by manipulating its controls that the car would roll clear of the track by reason of its own momentum. As to the second objection, he stated that the men of the party all started forward to warn the approaching train of the position of the automobile as soon as the car stopped, and that in any event their conduct was not subject to his control. Under these circumstances it seems clear that the question of negligence was one of fact for the jury, rather than one of law for the court, and this being so, we must abide by their verdict.

The judgment is affirmed.

RUDKIN, C. J., GOSE, and MORRIS, JJ., concur.