[No. 36043.    Department One.    December 27, 1962.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD CARNELL ROBINSON, *Appellant.**

*Irving C. Paul, Jr.,* for appellant.

*Reported in 377 P. (2d) 248.

*Charles O. Carroll* and *Richard M. Ishikawa,* for respondent.

WEAVER, J.—Defendant was convicted of rape, robbery and assault in the first degree. The sufficiency of the evidence is not challenged.

Defendant makes three assignments of error.

*First:* "Due process of law requires a preliminary hearing as prerequisite to an information charging a felony."

■ This court has rejected defendant's first contention on numerous occasions. *In re Pennington v. Smith,* 35 Wn. (2d) 267, 270, 212 P. (2d) 811 (1949) is dispositive of defendant's first assignment of error. The court said:

". . . Where, however, the prosecutor elects to proceed independently, he is not required to invoke Rem. Rev. Stat., § 1949 [RCW 10.16.010], but may file an information on his own authority. *A preliminary hearing is not necessary to due process.* See *State v. McGilvery,* 20 Wash. 240, 245, 55 Pac. 115; and the cases cited therein; *State v. Shears,* 119 Wash. 275, 278, 205 Pac. 417; and *In re Thompson v. Smith,* 33 Wn. (2d) 142, 204 P. (2d) 525." (Italics ours.)

*Second:* "The trial court abused its discretion in allowing the witness Wesley Millet to testify that one Jackie Houston supplied information connecting the defendant to the crime."

Wesley S. Millet, a member of the Seattle Police Department for 18 years, and one of the investigating officers, was called as a defense witness. He testified that the complaining witness had identified the picture of Leonard N. Bourgeois as one of the men who attacked her.[1]

On direct examination defense counsel explored quite fully the investigation of the crimes made by the police department and the witness' participation in it. One facet of this approach was Mr. Millet's identification of friends of Mr. Bourgeois, who were investigated by the police as

---

[1] Bourgeois, charged jointly with defendant, had pleaded guilty and was awaiting sentence at the time of trial. Subsequently, he testified as a rebuttal witness and implicated defendant in commission of the crimes charged.

possible suspects, in order to cast doubt on the identity of defendant as one of the perpetrators of the crimes.

At the end of Mr. Millet's direct examination, the following occurred:

"Q. [Mr. Paul] But you didn't investigate any other friends of Mr. Bourgeois? A. I was trying to find them out. Q. Did you find any other friends? Has Mr. Bourgeois got any other friends that you know of? A. Oh, yes. The girl he used to go with, and, in fact, *she gave us the key to our friend Robinson.* [Defendant] Q. Did he have any male friends? A. Female. Q. You didn't know of any other male friends? A. No. The only two male friends were Robinson and Bourgeois. [From previous testimony, it would appear that the witness meant "Simmons" instead of "Bourgeois".] Mr. Paul: I think that's all." (Italics ours.)

The italicized portion of the witness' answer was not responsive to the question asked; it was volunteered. Defense counsel, however, did not object; neither did he move to strike, nor request the court to instruct the jury to disregard the unsolicited remark.

The trial court recognized the width of the door opened by the direct examination. After argument of counsel made in the absence of the jury, the trial court permitted the state, on cross-examination, to ask only one question pertaining to the volunteered remark as it applied to the entire investigation.

"Q. . . . And did you learn from your investigation, from that girl, information connecting Mr. Robinson [defendant] to this crime? A. Yes."

■ The scope of cross-examination is peculiarly within the province of the trial judge. We will not disturb his determination of its boundaries unless there is a manifest abuse of discretion. *Good v. West Seattle General Hospital Corp.,* 53 Wn. (2d) 617, 335 P. (2d) 590 (1959); *Miller v. Edwards,* 25 Wn. (2d) 635, 171 P. (2d) 821 (1946).

■ Since defendant introduced the issue, he cannot be heard to complain of the limited cross-examination permitted by the trial court. *State v. King,* 58 Wn. (2d) 77, 78, 360 P. (2d) 757 (1961).

" . . . Furthermore, none of this matter was of sufficient significance to prejudice the defendant in the jury's consideration of the crucial evidence." *State v. Link,* 58 Wn. (2d) 642, 647, 364 P. (2d) 433 (1961).

We find no abuse of discretion.

*Third:* The court erred "in denying defendant's motions to produce the written statements of the witnesses [names omitted], for the purpose of affording the defendant the full right of cross-examination of said witnesses."

This assignment of error springs from the following:

On direct examination, Miss A, one of the prosecuting witnesses, testified that defendant Robinson and another man abducted her and her fiance, Mr. B. The men assaulted, robbed, and locked Mr. B in the trunk of the automobile; then defendant and the other man each raped her three times.

Miss A neither used notes to refresh her memory while testifying, nor referred to any written statement given by her to the police.

On cross-examination, Miss A testified that she gave a description of the men who abducted them " . . . to the woman at headquarters, and it was all taken down."

Defense counsel stated:

" . . . at this time I would like to request that the plaintiff, the State, produce any written statement this young lady might have made so we can examine it in aid of our cross-examination."

The trial court refused the request.

Later, on cross-examination, Miss A testified that several days before trial the deputy prosecuting attorney had given her a copy of the statement she had made to the police; " . . . but", she stated, "I didn't read it because I knew all—I remembered the story." She admitted, however, that she did not remember all of the details as well at the time of trial as she did the morning after the incident.

Defense counsel again requested that he " . . . be permitted to examine the copy of the memorandum this lady used to refresh her recollection."

In the absence of the jury, the deputy prosecuting attorney agreed to furnish the statement ". . . if I can make it an exhibit and let the jury read it, too." The offer was not accepted.

After argument of counsel, the trial court observed that a detailed cross-examination of Miss A, based upon her written statement, ". . . could be a repetition of a harrowing ordeal"; and "where no substantial right is involved, I think the court is entitled to impose reasonable limits."

Defense counsel then stated: ". . . I am only really interested *in the time element*, and I have no desire to go over with this young lady the other events." (Italics ours.)

The trial court read the witness' written statement and advised counsel of the "time element" involved. Defense counsel, however, pressed for a ruling on his original request for the entire written statement of the prosecuting witness for use in cross-examination. The request was denied.

At the end of Mr. B's cross-examination, he stated that the police had reduced his conversation to writing. Prior to trial, he had not re-read the statement, nor had it been re-read to him.

The court denied defense counsel's request that he be permitted to examine Mr. B's statement for the purpose of cross-examination. Outside the hearing of the jury, the court advised counsel of the "time element" set forth in the statement, although the record does not disclose that defense counsel limited his request to the "time element", or in any manner waived his demand for the entire statement.

Defendant contends that he was denied due process of law by the trial court's refusal to order the prosecuting attorney to produce the written statements of Miss A and Mr. B for use in their cross-examination. Defendant relies heavily upon *Jencks v. United States,* 353 U. S. 657, 1 L. Ed. (2d) 1103, 77 S. Ct. 1007 (1957) in support of his contention.

We are not governed by the decision in the *Jencks* case for it was not decided upon constitutional grounds; at most, it established a rule of procedure for criminal cases in federal courts. The broad implications of the opinion have been curtailed by a statute subsequently adopted by Congress. 18 U. S. C. § 3500 (1957).

Defendant argues that there is a logical and valid basis for distinction between pretrial discovery in a criminal case and obtaining a statement for the purpose of cross-examination once the credibility of a witness has been put in issue. Assuming arguendo that such a distinction *may* exist (a question we do not decide), defendant demands the written statements as a matter of right without establishing any facts or elements that *might* remove the latter from the operation of the rule applicable, in this jurisdiction, to the former.

■ In *State v. Beck*, 56 Wn. (2d) 474, 490, 349 P. (2d) 387 (1960), four members of the court called attention to the fact that we had recently explored the whole area covered by the *Jencks* case in *State v. Thompson*, 54 Wn. (2d) 100, 338 P. (2d) 319 (1959).

In the *Thompson* case, we approved the trial court's pretrial order directing the prosecuting attorney to make available to defendant certain documents and written statements. The court said:

"There is a dispute of authority in other jurisdictions as to the extent the prosecution is required to make evidence available which may be in its possession for examination by the defense in criminal cases. However, the rule has been well established in this state since the early case of *State v. Payne*, 10 Wash. 545, 39 Pac. 157 (1895), wherein we held this is a matter within the discretion of the trial court which we will not disturb unless there is a manifest abuse of discretion. [Citing six prior decisions of this court.]"

■ It is apparent from the record that the trial judge recognized this rule. He did not summarily deny defense counsel's request for production of the written statements. He took into consideration the possible subjection of Miss

A to an extended cross-examination about the attacks made upon her, as well as the necessity of protecting defendant's rights. He read both written statements in camera and advised defense counsel of the "time element", requested by defense counsel, at least as to Miss A's testimony. We cannot say that the trial court abused its discretion.

The judgment is affirmed.

FINLEY, C. J., HILL, and ROSELLINI, JJ., concur.

February 11, 1963. Petition for rehearing denied.

*Reported in 377 P. (2d) 255.