[No. 3349-0-III.  Division Three.  December 9, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVE DELANO KALAMARSKI, *Appellant.*

*Virginia Pickett* and *Pickett & Pickett,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Daniel W. Short, Deputy,* for respondent.

ROE, J.—Steve Kalamarski was charged with second degree rape of Tina Ortiz. His defense was that it was consensual. Prior to trial, seeking to prove Ortiz was unstable and had a motive for revenge, defendant moved to introduce evidence of previous psychiatric counseling which Ortiz had received. In order to show her consent to the instant act of intercourse, he also sought to introduce evidence of a date between the two 18 months before the alleged rape which he claimed ended in consensual sexual intercourse. The trial court denied the motions in part. It allowed Kalamarski to testify concerning the prior date and consensual intercourse, but allowed only limited cross-examination of Ortiz concerning her marriage and divorce and did not permit cross-examination of her concerning the prior date or consensual sexual intercourse. Kalamarski appeals the court's rulings. We affirm.

RCW 9.79.150[1] declares evidence of an alleged victim's past sexual history inadmissible to impeach her credibility. It does, however, allow such evidence to show consent, but only when there has been prior sexual intercourse between the victim and the perpetrator, the prior behavior is material, and the court finds its probative value exceeds its prejudicial effect. Kalamarski contends the statute denies him due process, as it restricts his right to confront the witness against him.

---

[1]RCW 9.79.150 was recodified as RCW 9A.44.020 in 1979.

■ ■ Although the right to cross–examine is basic, it is not absolute.[2] *State v. Boast,* 87 Wn.2d 447, 553 P.2d 1322 (1976). The limitation of cross–examination found in RCW 9.79.150 is not a denial of a defendant's due process rights. *State v. Blum,* 17 Wn. App. 37, 561 P.2d 226 (1977). The scope of such cross–examination is discretionary with the trial court, whose determination should not be disturbed unless there has been an abuse of discretion. *State v. Krausse,* 10 Wn. App. 574, 519 P.2d 266 (1974). Thus, in deciding this case, we must examine the trial court's determinations and decide if "no reasonable person would take the view adopted by the trial court." *State v. Huelett,* 92 Wn.2d 967, 969, 603 P.2d 1258 (1979).

First, Kalamarski urges that the evidence of the prior alleged act of consensual sexual intercourse ipso facto should have been admitted. Although a persuasive case can be made that all evidence of prior sexual intercourse between the victim and the defendant is admissible, the Washington statute does not go so far. The statute allows such evidence only when the trial court determines its probative value outweighs the probability it will create a "substantial danger of undue prejudice," either to the victim or the defendant. No other case in Washington has reached this issue. Although some jurisdictions have allowed all of such evidence, *State v. Roberson,* 543 S.W.2d 817 (Mo. App. 1976); *Hunt v. State,* 44 Ala. App. 479, 213 So. 2d 664 (1968), others have held it is not always relevant to a defense of consent. *People v. Dery,* 74 Ill. App. 2d 112, 219 N.E.2d 536 (1966); *Milenkovic v. State,* 86 Wis. 2d 272, 272 N.W.2d 320 (1978).

---

[2]We have no quarrel with the dissent's exposition of the right of cross–examination or the facility of charges of rape. While interesting, it does not address the issue we feel determinative in this case, namely, the discretion of the trial court in determining relevant and material evidence. The statute which limits cross–examination to avoid some of the abuses waged in the past against the complaining witness clearly contemplates the action of the trial court, which is sustained in this case.

Here, there was alleged one prior act of intercourse occurring approximately 18 months before the act for which Kalamarski was tried. The remoteness in time of the prior act is one factor in determining its relevance. *Milenkovic v. State, supra* at 325. The trial court considered the 18 months between the first and second encounters of the defendant and Ortiz and ruled that evidence of the prior was inadmissible. Questions of remoteness are matters within the sound discretion of the trial court. *State v. Gray,* 64 Wn.2d 979, 984, 395 P.2d 490 (1964); *State v. Hubbard,* 27 Wn. App. 61, 64, 615 P.2d 1325 (1980). This was within its discretion. Although there may be circumstances in which a different decision should be made, we do not find an abuse of discretion here.

Ortiz' testimony on cross–examination might not have been that helpful to Kalamarski. According to the prosecution's offer of proof at the pretrial hearing, Ortiz would have denied the prior consensual intercourse. This would have left it for the jury to choose between the stories of Ortiz and Kalamarski. Without Ortiz' testimony, however, Kalamarski could have argued that his statements regarding the prior activity had gone unrebutted and that the jury had little choice but to believe him. He did not choose to so argue.

Kalamarski also argues evidence of psychiatric counseling which Ortiz had undergone 4 years previously in 1975 should have been admitted to show her motive for accusing him of rape. Such evidence, as it is collateral, must be material and relevant to the matters which are sought to be proved. *State v. Jones,* 67 Wn.2d 506, 408 P.2d 247 (1965). The extent of cross–examination is left to the trial court's discretion, especially when the matters are collateral to the issue. *State v. Goddard,* 56 Wn.2d 33, 351 P.2d 159 (1960); *State v. Price,* 17 Wn. App. 247, 562 P.2d 256 (1977); *State v. Battle,* 16 Wn. App. 66, 553 P.2d 1367 (1976).

The trial court did not abuse its discretion here. The evidence at trial showed Ortiz was stable enough to satisfactorily hold a job. The counseling she received years before the alleged rape was for a short period of time. Ortiz had seen a psychiatrist because she was depressed over her divorce and hysterectomy which she had. The court considered both the remoteness of the counseling and its nature and ruled the evidence would not bear on the question of her consent. This ruling was proper.

Lastly, Kalamarski argues RCW 9.79.150 shifts the burden of proof to him to show Ortiz did consent to the alleged rape. The prosecutor is under an obligation to prove every element of the charge. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). Here, Ortiz testified she did not consent to the sexual intercourse. Kalamarski had the opportunity to cross–examine her about the events on the night of the alleged rape and to raise doubts in the jury's mind about her lack of consent. The jury believed Ortiz. The State at all times had the burden of proof on this issue. Kalamarski was found guilty of third degree rape. There was no shifting of the burden of proof.

The conviction is affirmed.

GREEN, C.J., concurs.

MCINTURFF, J. (dissenting)—I respectfully dissent from my learned brothers. The complainant's prior sexual activity with Mr. Kalamarski presented a difficult evidentiary and constitutional problem. Although the newly enacted law[3] has a noble purpose,[4] we must keep in mind that the

---

[3]RCW 9A.44.020 states, in part:

"(2) Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, *but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the*

law affecting criminal defendants is approached not from the standpoint of the victim, but from that of the accused. The court's ruling that Mr. Kalamarski could not cross–examine the complainant, Ms. Ortiz, regarding prior consensual sexual activity between them was a denial of Mr. Kalamarski's right to confront an adverse witness under the

---

*past behavior between the perpetrator and the victim may be admissible* on the issue of consent to the offense." (Italics mine.)

[4]As a part of the legislative history behind RCW 9.79.150 (RCW 9A.44.020) we note a memorandum dated March 7, 1975, from the Chairman of the State Senate Judiciary Committee to members of the Senate Rules Committee in which it is stated:

This proposal is badly needed, and is long overdue. There is no logical or scientific relationship between chastity and veracity. No psychologist would claim that sexual intercourse, whether licit or illicit, has any effect on credibility. The pronouncement of judges long ago that when a woman lost her virtue her word could no longer be trusted was a presumption without any proof to support it. Yet that old rule was utilized by defense counsel, not really to question the victim's credibility, but primarily to besmirch her character in the hope that the jury would be unwilling to send the defendant to the penitentiary over such a woman. The result was that a rape victim was often subjected to a harrowing cross examination about her past sexual history, and any misconduct or impropriety was blown up as though it were the controlling fact in the case. This device has not only resulted in the acquittal of many rapists who were actually guilty, but the fear of it has caused many rape victims to refuse to prosecute because they were unwilling to be subjected to this disgraceful ordeal.

. . .

This, I submit is a deplorable situation. What is needed is a clearly drawn statute prohibiting all such evidence which is not related to the crime charged. Section 2 subsection (2) of the Women's Commission proposal clearly does this.

This proposed statute would likewise exclude the victim's past sexual history on the issue of consent. The same considerations apply to the consent issue as apply to the credibility issue. Relationships between the victim and *other* persons on other occasions obviously have no logical or scientific bearing on whether or not the victim consented to the assault charged against the defendant. To make such evidence admissible would simply be to invite the defense to besmirch the character of the victim and to put her on trial instead of the defendant. *However, prior sexual relationships between the victim and the defendant might well have a bearing on the consent issue, and this is provided for as an exception in the proposed statute.*

(Footnote omitted. Italics mine.)

Sixth Amendment.[5] His right to present corroborating evidence of consent to the jury has been infringed. There is no more serious undertaking of the State than accusing a person of a crime, with the concomitant threat of loss of liberty or life. Surely the rights of a defendant charged with rape are no less important or protected than the rights of defendants accused of other crimes who are allowed to corroborate their testimony by cross–examination.

An oft–quoted comment about rape is that of Sir Matthew Hale:

> "It is true rape is a most detestable crime, and therefore ought severely and impartially to be punished . . . but it must be remembered that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent."

Comment, *Ohio's New Rape Law: Does it Protect Complainant at the Expense of the Rights of the Accused?*, 9 Akron L. Rev. 337 (1975), citing 1 M. Hale, *Pleas of the Crown* 634 (1847). The essence of the issue is the believability of a witness.

"Cross–examination is the principal means by which the believability of a witness and the truth of . . . testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). Indeed, cross–examination is the testing ground of a witness' credibility—thus it is fundamental that a defendant be given great latitude in the examination of a complaining witness. *State v. Tate,* 2 Wn. App. 241, 247, 469 P.2d 999 (1970). As we have noted in *State v. Peterson,* 2 Wn. App. 464, 466–67, 469 P.2d 980 (1970):

> This is especially so in the prosecutions of sex crimes where, owing to natural instincts and laudable sentiments on the part of the jury, the usual circumstances of isolation of the parties involved at the commission of the

---

[5]The Sixth Amendment states:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ."

offense and the understandable lack of objective corroborative evidence, the defendant is often disproportionately at the mercy of the complaining witness' testimony.

(Citations omitted.) Without being given the opportunity to cross–examine the complaining witness regarding her prior sexual activity with Mr. Kalamarski, he was left with nothing to corroborate his testimony. In contradistinction, Ms. Ortiz was able to corroborate her version of the incident. The jury should have been given the cross–examined benefit of both versions.

Although public policy may support exclusion of relevant evidence in some cases, the court's basic obligation to provide a fair trial to the defendant is a prerequisite countervailing consideration. One procedural safeguard to a fair trial is the Sixth Amendment right of the accused to be confronted with witnesses against him.[6] The right of confrontation is, in essence, the right of a criminal defendant to cross–examine opposing witnesses. *Douglas v. Alabama,* 380 U.S. 415, 418, 13 L. Ed. 2d 934, 937, 85 S. Ct. 1074 (1965). Additionally, its purpose is to help assure the integrity of the fact–finding process. *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970); *Davis, supra* at 316.

In *Davis v. Alaska, supra,* the defendant alleged that the application of the state statute aimed at preserving the confidentiality of juvenile adjudications of a delinquency violated his right of confrontation. The statute prevented the defendant from impeaching the credibility of a prosecution witness by cross–examination because of the witness' probationary status as a juvenile delinquent. The United States Supreme Court reversed Davis' conviction and held the limitation placed on the cross–examination violated the confrontation clause of the constitution. The court stated:

---

[6]The Sixth Amendment right to confrontation was held incorporated within the Fourteenth Amendment and therefore binding on the State in *Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).

"The accuracy and truthfulness of [the prosecution witness'] testimony were key elements in the State's case against petitioner." *Davis, supra* at 317. In reaching its result, the court rejected the State's argument that its interest in protecting the anonymity of juvenile offenders outweighed any interest Davis might have had in cross-examining the prosecution witness about his probationary status. The court said:

> We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender. . . . Here, however, petitioner sought to introduce evidence of [the witness'] probation for the purpose of suggesting that [the witness'] . . . testimony was either not to be believed . . . or at least very carefully considered in that light. . . . In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. *Whatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record . . . is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial . . . witness.*
>
> *. . . we conclude that the State's desire that [the prosecution witness] fulfill his public duty to testify free from embarrassment and with his reputation unblemished must fall before the right of petitioner to seek out the truth in the process of defending himself.*
>
> *The State's policy interest . . . cannot require yielding of so vital a constitutional right as the effective cross-examination . . . of an adverse witness.*

(Italics mine.) *Davis, supra* at 319–20.

In the instant case, the complaining witness, Ms. Ortiz, was allowed to corroborate her testimony through other witnesses; however, the defendant was denied the opportunity to attempt the corroboration of his testimony through cross-examination. It is true that one–half of the story was before the jury and that defense counsel could have argued the testimony was not rebutted, but can this adequately satisfy the constitutional right to confrontation? Because this case rises or falls on the credibility of the complaining

witness, should we allow conviction and imprisonment without the prior sexual activity between Mr. Kalamarski and the complaining witness being tested by cross–examination?

In *McLean v. United States*, 377 A.2d 74 (D.C. App. 1977), the District of Columbia Court of Appeals stated at page 78, footnote 5:

> We note that evidence of specific acts of sexual intercourse with the *defendant* himself should be admitted where either there may be an issue of identity at trial or to rebut the government's evidence that the prosecutrix did not consent to sexual intercourse. . . . *See State v. Roberson*, 543 S.W.2d 817, 820 (Mo.App.1976); *Pope v. Superior Court*, [113 Ariz. 22], 545 P.2d at 953 [(1976)]; *People v. Wilcox*, 33 Ill.App.3d 432, 337 N.E.2d 211, 216 (1975); *People v. Whitfield*, [58 Mich. App. 585], 228 N.W.2d at 478 [(1975)].

Once a woman has had intercourse with a particular man, an argument can be made that she consented on a subsequent, albeit remote, occasion. Conversely, one could argue that no such inference should be drawn because the woman ought to be free to change her mind at each encounter. In any event, the cross–examination testimony on this point should be presented to the jury so it can make an informed decision.

The State's interest in enacting RCW 9A.44.020 was to encourage the reporting of rape to aid crime prevention and protect the privacy of the complaining witness. But traditionally, prior sexual intercourse between the complaining witness and defendant has been held probative to show consent.[7] Presumably the legislature adopted this traditional view by engrafting the following exception to RCW 9A.44.020(2):

---

[7]Comment, *Evidence: Rape Victim Protection*, 18 Washburn L.J. 665, 666 (1979). *See also State v. Ball*, 262 N.W.2d 278 (Iowa 1978); *In re Nichols*, 2 Kan. App. 2d 431, 580 P.2d 1370 (1978); *State v. Roberson*, 543 S.W.2d 817 (Mo. App. 1976); *State v. Mason*, 201 Neb. 693, 271 N.W.2d 470 (1978). In discussing admissibility of evidence concerning a complainant's prior sexual activity with the defendant, the author of *Ohio's New Rape Law: Does it Protect the Complainant*

[W]hen the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.

Thus, in order to effectuate both the legislative intent and the purpose behind the confrontation clause, a liberal interpretation of this exception is required.

Only when cross-examination is permitted to bring out all probative evidence concerning consensual intercourse between the complaining witness and the defendant will a criminal trial be consistent with the constitutional edict that the defendant "shall enjoy the right . . . to be confronted with the witnesses against him . . ." To do less lacks fundamental constitutional fairness.

Reconsideration denied January 8, 1981.

---

*at the Expense of the Rights of the Accused?*, 9 Akron L. Rev. 337, 345 (1975) stated:
   the witness should expect to come to court prepared to answer questions about any prior relationship with the defendant . . .